[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CT Page 2387
This action was commenced by complaint filed by the plaintiff husband on February 25, 1997 seeking a dissolution of his marriage to the defendant wife on the ground of an irretrievable breakdown. On February 28, 1997, the defendant appeared and filed her answer to the complaint along with a counter claim in which she also seeks a dissolution of the marriage on the ground of an irretrievable breakdown. Each party has admitted all of the allegations contained in the complaint and counterclaim.
A trial on the complaint and counterclaim was conducted on February 4, 1999. Both parties were present and were represented by counsel. In addition to numerous exhibits which were introduced into evidence, the court heard from three witnesses: the plaintiff, Theodore Burhans, the defendant, Susan Burhans, and Margaret Gregan, a licensed real estate broker and appraiser. From the testimony and evidence produced, and after carefully assessing the credibility of the witnesses, the court finds the following to have been proven.
The plaintiff and the defendant, whose prior name was Susan A. David, intermarried on August 5, 1994 in Agawam, Massachusetts. The parties resided continuously in the State of Connecticut for more than twelve months prior to the date of the complaint. One child, Disiree Michelle, was born of this marriage on December 7, 1995. No state or a public agency has contributed to the support of either party. The court finds that it has jurisdiction over the parties and the marriage.
The parties began living together in 1992 and on October 22, 1993 they purchased a house located at 584 Gurleyville Road, Storrs, Connecticut with a loan in the amount of $128,200 secured through an open-end mortgage. Both the mortgage and the Warranty Deed (Survivorship) are in the names of Theodore O. Burhans, III and Susan A. David. The parties were married on August 5, 1994.
Early in 1997 the parties filed for divorce and in July 1997 the defendant moved out of the marital residence. Both parties accuse each other of contributing to the demise of the marriage. The plaintiff claims that the defendant was distrustful of him and that they argued frequently. He alleges that she is mentally unstable but produced no evidence in support of that allegation. The defendant accuses the plaintiff of having a gambling problem and borrowing money to satisfy that habit, but offered little CT Page 2388 evidence in support of that allegation. The court does not find either party to be more at fault than the other in causing the breakdown of the marriage.
Both parties are relatively young and appear to be in good health. The plaintiff is employed as a school teacher with the South Windsor Board of Education and the defendant is employed as a speech therapist with the State of Connecticut Department of Mental Retardation. The plaintiff has a gross income of approximately $690 per week, and the defendant has a gross income of approximately $960 per week. However, as a school teacher, the plaintiff is not required to work for the South Windsor school system during the months of July and August and thus has the ability to supplement his income by obtaining summer employment.
The parties have submitted two written stipulations to the court. The first is dated November 19, 1998 and addresses the issues of custody, visitation and child support. The second, dated February 4, 1999, addresses the issues relating to the distribution of all marital assets with the exception of the marital residence. The court finds the stipulations to be reasonable and equitable and, with minor adjustments, the court will incorporate said stipulations into its judgement, as requested by the parties.
The only significant matter remaining in dispute in this case concerns the marital residence. The plaintiff wishes to remain in the house and is asking the court to order the defendant to Quit Claim the property to him. The defendant does not want the property and is asking the court to order the house to be sold.
The plaintiff proposes that if the marital residence is assigned to him he will hold the defendant harmless on the existing mortgage. He alleges that he is financially unable to refinance the mortgage at this time and thus is unable to remove the defendant's name from the mortgage. The plaintiff argues that allowing him to remain in the residence would provide a stable environment for the three-year-old child who will be in his care for 50% of the time.
The defendant does not want to keep the house for herself nor does she want to be obligated on the mortgage. She wants her name removed from the mortgage claiming that if the property is simply assigned to the plaintiff the defendant will remain obligated to pay the existing mortgage loan or any deficiency judgement in the CT Page 2389 event of a foreclosure. She testified that she hopes to be able to buy a modest home for herself and their child within the next few years. Her major concern is that her credit rating will be adversely affected if the plaintiff is unable to make the mortgage payments. This would result in difficulty in obtaining her own mortgage. Additionally, she believes that if she remains obligated to pay the mortgage on the existing marital residence she will find it difficult to obtain an additional mortgage.
Margaret Gregan, a licensed real estate broker and appraiser, who testified that on behalf of the plaintiff, prepared a comparative market analysis of the marital residence located at 584 Gurleyville Road, Storrs, Connecticut. She inspected the property in June 1998 and found it to be a modest contemporary colonial style home built on a slab foundation with electric baseboard heat and in need of some repair. There is some interior water damage from an intermittent leak in the roof including water damage to the sheet rock and tile in the bathroom and some water staining to a ceiling. Additionally, there is a need for some exterior carpentry work as well as exterior paint or staining of the building. She testified that the fair market value of the house is between $122,900 and $124,900, assuming the necessary repairs are made to the building. She also estimated that it would take approximately six months to sell the house but, because it lacks a full basement, has electric heat, as well as the need for repairs, the house is not very marketable. Her testimony was not disputed by any other evidence.
The current balance owed on the mortgage is $121,260. Assuming that the house could be sold for as much as $123,000, the real estate broker's fee and other closing fees and costs would likely be about $8000. This would leave a deficiency of approximately $6000 which the parties would have to pay at the time of closing. The defendant has proposed that both parties equally share that shortfall. The plaintiff does not believe that he would have the financial ability to do so. The immediate sale of the property does not appear to be a financially realistic option at this time.
Both parties are in debt. In addition to the mortgage debt, the plaintiff lists debts to creditors in the amount of more than $28,000. Additionally he has a loan balance of $9800 for his motor vehicle. The defendant lists debts to creditors in the amount of $6900 in addition to a $6000 loan balance for her motor vehicle. The evidence indicates that the plaintiff has been CT Page 2390 having difficulty meeting his financial obligations. (Exhibits 2b — 8a-8b, 9b, 12a-12b-12c-12d) Were it not for the fact that he rents rooms to two graduate students for a total income of $750 per month, it is questionable whether he would be able to pay his $1160 monthly mortgage and tax payments. He has been unable to save sufficient money to make the above-mentioned repairs to the house.
After taking into consideration all of the criteria and factors set forth in § 46b-62, § 46b-81 and § 46b-82, and applying the same to the evidence, the court enters the following orders.
A decree is entered dissolving the marriage of the parties on the grounds of an irretrievable breakdown, all the allegations of the complaint and counterclaim having been proven.
(A) Pursuant to the stipulation entered into by the parties on November 19, 1998 regarding child custody issues, which the court finds to be equitable under the circumstances of this case, it is the order of the court that the parties shall share joint legal and physical custody of the minor child, Disiree Michelle, with her primary residence being with both the plaintiff/father and the defendant/mother. Additionally, the following orders are entered in accordance with the agreement of the parties:
(1) The parties have agreed upon and shall participate in a joint parenting plan as follows.
In the first week in each two-week cycle, the father will pick up the child from daycare on Friday afternoon. He will return to her to daycare Monday morning. The mother will pick up the child from daycare Monday afternoon and will drop her off at daycare Tuesday morning. The mother will pick up the child from daycare Tuesday afternoon and drop her off at daycare on Wednesday morning. The father will pick up the child Wednesday afternoon from daycare and drop her off on Thursday morning at daycare. The mother will pick up the child from daycare on Thursday afternoon and drop her off Friday morning at daycare. In the second week in the cycle, the mother will pick up the child from daycare on Friday afternoon and then drop her off Monday morning at daycare. The father will pick up and drop off the child at and from daycare Monday through Thursday morning. The mother will pick up the child from daycare Thursday afternoon and drop her off at daycare on Friday morning. The above CT Page 2391 schedule, which is on a two-week cycle, simply repeats after week two of the above stated cycle.
It is understood that since the mother is free until 1:00 p. m. on Wednesdays, the mother may have the child in her care every Wednesday morning. If the mother desires to exercise this parenting time, she can pick up the child from daycare or any other location mutually agreed upon with the father.
(2) The parties will alternate the following holidays: Labor Day, Thanksgiving Day, Easter, Memorial Day and Independence Day. The father will always have the child on the Saturday before Christmas and on Christmas Eve. The mother will always have the child on Christmas Day. The parties will share the parenting time with the child on her birthday and will co-ordinate the planning of any party. Holiday parenting time will take precedence over the normal parenting time schedule.
(3) The parties will continue with their shared parenting plan in the summer months. The plaintiff/father will notify the defendant/mother on or before March 30th each year in written form as to whether or not he will be available during the summer months to care for Desiree during the day. If he is unavailable, the parties shall mutually decide on their daycare arrangement.
(4) Any future modifications to the parenting plan will be made by the mutual agreement or through mediation, if necessary.
(5) Neither of the parties will pay child support to the other. The court finds, and the parties agree, that the application of the child support guidelines is inappropriate or inequitable due to the shared custody arrangement. However the parties will equally split the cost of daycare, any additional insurance for the minor child, as well as activity or camp fees. Both parties will buy clothes for the child as needed.
(6) The defendant/mother shall maintain medical and dental insurance for the minor child as it is available through her employment. Any cost shall be equally split between the parties. The plaintiff/father will pay one-half the cost of the health insurance (currently $24.00 per month) to the defendant/mother on the first of each and every month. Said payment is to be by check mailed to her residential address. All unreimbursed medical and dental bills (including orthodontic, psychiatric, prescription drugs or optical) for the minor child shall be equally split by CT Page 2392 the parties. Each party shall submit any bills to the other in a timely manner and shall cooperate with each other in the payment of these costs. In the event the defendant/mother is unable to continue to provide medical and dental insurance for the child, the plaintiff/father will obtain and maintain said insurance coverage under the same agreement outlined above. The parties shall maintain continuous medical and dental insurance for the child until she reaches the age of 19 years or until she completes the twelfth grade, whichever occurs first.
(7) The parties shall mutually agree in writing on any substantial changes to their daycare arrangement.
(8) Neither parent shall move the permanent residence of the child from the State of Connecticut without approval by a Connecticut Court after proper notification to the other parent of a court hearing.
(B) Pursuant to the February 4, 1999 stipulations of the parties relating to the distribution of marital assets, which the court finds to be equitable under the circumstances of this case, the following orders are entered.
(1) Each party shall waive any and all rights, if any, to the other party's retirement plans and TSA accounts.
(2) Each party shall retain the motor vehicle they currently have registered in their own name. The defendant will cooperate fully in signing the title to the 1995 Blazer if necessary to transfer title to the plaintiff.
(3) The plaintiff and the defendant shall henceforth hold, possess and enjoy for his or her whole and separate use, free from interference or control by the other party, all personal property, causes of action and other property of which he or she may now or hereafter be seized or possessed, except as otherwise herein provided. Each of the said parties shall henceforth have the free and entire disposition of all his or her estate and property by deed or conveyance, or by Last Will and Testament or otherwise, as if sole and unmarried. Each of the parties covenants that in the case of the other party dying within his or her lifetime, he or she will not claim or demand any estate, right, title or interest in or to any of the real or personal estate of the deceased party, whether by right of power or as tenant by the courtesy or by virtue or any statutory right to CT Page 2393 elect to take against any will or codicil of the deceased party which he or she may now or hereafter be or become entitled to by the laws of the United States of America, or of any of the United States or political subdivision thereof, or of any foreign county except as provided herein.
(4) Each party shall retain the bank accounts on their respective financial affidavits. The plaintiff shall retain the Putnam fund, MONY Life policy and his TSA account.
(5) The defendant will assume payment and hold the plaintiff harmless on the payment of People's Master Card and the portion of the debt to Connecticut State Employees Credit Union in the approximate amount of $800, which is the remaining amount due on the joint debt for a swimming pool the parties purchased for the marital home. The plaintiff will assume payment and hold the defendant harmless on the payment of Citibank VISA, First New England Federal Credit Union and the Sallie Mae Educational Loan. Each party shall be responsible for the remaining debts listed on their financial affidavits.
(6) The plaintiff/father shall be entitled to take Desiree as an exemption in even numbered years and the defendant/mother shall take Desiree as an exemption in odd numbered years. The plaintiff/father shall file amended 1997 Federal and State of Connecticut tax returns within 30 days of judgment, without the taking of the minor child as an exemption.
(7) The parties each agree to maintain their current life insurance policies with Mutual of New York in the amount of $100,000 naming the minor child as the irrevocable beneficiary and the other parent as the trustee until the minor child obtains the age of twenty-one.
(C) Marital residence. The marital residence is assigned to the plaintiff. The defendant shall Quit Claim to the plaintiff of all her right, title and interest in and to said property located at 584 Gurleyville Road, Mansfield, Connecticut within 30 days of the date of this judgement. The plaintiff shall assume and be solely responsible for all past due, current, and future mortgage payments, taxes, utilities, maintenance expenses and repairs related to the property. He shall hold the defendant harmless for the same.
The defendant's desire to be relieved of the obligation of CT Page 2394 financial responsibility for the mortgage debt on the marital home does not appear to be feasible at this time. However, as a matter of equity, she is entitled to some degree of protection in the event of bankruptcy or a default on the mortgage loan by the plaintiff. Accordingly, it is the order of the court that the plaintiff shall either refinance the existing mortgage or sell the property upon the first to occur of the following events: (1) the plaintiff and/or the child cease to use the property as a residence; (2) the child, Disiree Michelle Burnham, completes the twelfth grade or reaches the age of nineteen years, whichever occurs first.
Until such time as the plaintiff refinances or sells the property, he shall pay to the defendant periodic alimony in the amount of $1.00 per year. The express purpose of this periodic alimony order is to protect the defendant, who remains obligated on the mortgage, from the direct and indirect financial consequences of a mortgage loan default by the plaintiff.
The occurrence of any of the following events shall constitute a significant change in circumstances warranting a modification of the $1.00 per year alimony obligation. (1) A mortgage foreclosure action is instituted in which a claim for repayment of the mortgage loan or any deficiency judgement resulting therefrom is sought from the defendant. (2) The obligation to pay the mortgage debt is discharged in bankruptcy and as a result of such discharge a third party makes a claim against the defendant for repayment of the mortgage obligation or any portion thereof. It is the intent of the Court that any alimony ordered under these circumstances, as well as the plaintiff's obligation to hold the defendant harmless on the mortgage, not be dischargable in bankruptcy. In all other respects, the alimony is non-modifiable.
4. This has been a short term marriage. The parties have comparable income, income potential, and financial needs. Neither party has a financial advantage over the other nor is the current or projected need of either party greater than the other. Consequently, each party will be responsible for his and her attorney's fees, and no additional alimony, beyond that orderedabove, is awarded to either party.
Counsel for the plaintiff shall prepare and submit to the court a judgement file within 30 days of the date of this judgement. Both the plaintiff's attorney and the defendant's CT Page 2395 attorney shall sign the judgement file.
 Terence A. Sullivan Superior Court Judge